Case numbers 20-1199, 20-1200, and 20-1243, Ryan Lyngaas versus Curaden AG et al. Oral argument not to exceed 15 minutes per side. Mr. Sullivan, you may proceed for the defendants. Thank you. Good morning, your honors. Brian Sullivan on behalf of the appellant Curaden USA and the cross appellee Curaden AG. I find myself in a difficult predicament procedurally because Curaden AG won at the trial level, but we did make a cross appeal and I've been asked to address both of those in my opening remarks. At the close of the trial, which I'll submit should not have occurred, and I'll address that in a moment, the trial court noted in its opinion in order number 129 that it was puzzling to say the least that the plaintiff failed to bring forth admissible evidence to demonstrate who received the faxes from either March 8th or March 28th of 2016. I submit that that is where the trial court should have stopped and when it entered its final judgment in document 146, it should have entered judgment on behalf of to prove its case on the class claims. We recognize that Dr. Lengas himself testified at the trial and testified he received two faxes, but the plaintiff relied on inadmissible evidence and an expert that was disqualified and therefore at the close of the evidence, there was nothing for the plaintiff to hold his hat on. Did you move to decertify the class? We did not. We asked, after the class was certified, we did ask the court to state a since we could pursue an appeal with the Sixth Circuit. But why isn't, I mean, why isn't that the remedy is to move to decertify the class? Well, we had a dispute with the court, the trial court, your honor. In its class certification motion, he was relying upon the representation by counsel that they would be able to admit these fax logs into evidence. No, I understand that, but it seems to me that if they were, if the plaintiff said done their job and admitted it, it wouldn't be a problem. They didn't. Why isn't the remedy you have to move for decertification? It's not the district court's job, sua sponte, to do it. No, I think the remedy is at the end of the trial, the court just say that the judgment is for the defendant because the plaintiff failed to prove its case on the class. What law still requires at trial that they prove? What do they have to prove? I'm not sure. Like, do they have to prove one of the requirements is that it's manageable? Do they have to prove that the class is manageable? And where does that rule come from? It seems to me that under the rules, the proper mechanism is just to move to decertify the class. Respectfully, I think the requirement of the plaintiff is to bring forth evidence so the court can decide who received the facts or either of the two faxes. And when the trial occurs and you're left with no evidence as to who received the facts, there's nothing for the court to do other than to what it did, which I think is improper, is to say, we'll give them another bite at the apple and allow them to submit affidavits and see who can recall from four years ago who might have received the facts. That's what was improper is, you know, while I think the DUSKY case stands for the proposition that, you know, you have to come forth with some evidence, including admissible evidence, of who received the facts. Our trial judge said at the class certification for now, I will assume that they can bring forth that admissible evidence at trial because they say they would either by some form of affidavit or something else that overcomes both hearsay and authentication, but that's where they failed. And I submit, Your Honor, that decertification, while probably one remedy, but given that the evidence at the trial was the day in which we found out they didn't have the evidence, that the remedy was to enter judgment on behalf of Cured in USA. And that's what we're asking. I mean, certainly other cases have had claim administration processes, haven't they? They have, but the plaintiff in this case, Your Honor, chose the path where they're going to have an opt-out class and use the summary facts logs as evidence of who received the facts versus what they could have proceed is to have a class process where people can come forward by affidavit and say, we received the facts and so on and so forth. They chose the path that came back on eventually to haunt them, where they were unable to meet the merits or the burden that they were required to meet. Now, I can tell you one of the concerns in this case that I think I have certainly, and maybe the panel as a whole, is what is a telephone fax machine? And what the district court did okay. Yeah, that goes into one of my other, the point we raise is we think certification was improper because by the testimony of Mr. Comney from AdMax, that at least some portion of these recipients received it via computer. It's the proverbial, what we call the e-fax. And our submission to the trial court was, if you just look at the statute, if you just look at the language of the statute, it has to be received by a telephone facsimile machine. Can I ask you about that? So I read the plain language of the statute to say it has to have the capacity, right, to receive it over a regular telephone line onto paper, right? That's what it says. Yes. Fair reading. Okay. Why can't a computer with a modem and a printer receive it over a regular telephone line onto paper? I would agree if it's receiving it via Wi-Fi, if it's an iPad, if it's an iPhone or any phone, any cellular phone, I'm sorry, you probably wouldn't. So I agree the class is overly broad, but why wouldn't a computer that receives an e-fax that is attached to a phone line and a printer, why wouldn't that have the capacity to do so? It has the capacity. The intervening step is a telephone facsimile machine prints it upon receipt of the fax. Does it say that? Because I agree with you on that, but does it say that in the definition? The definition seems broader to me. It does not say in the definition, but I think if you look at the definition, where the fax originates from is a broader definition than where the fax goes to. It's clear that it says it has to go to a telephone facsimile machine, which I don't think if the of the statute, but if the intent was to say it could go to something broader than the facsimile machine, Congress would have said that, but they chose not to. I think, look, I wholeheartedly agree with you. We shouldn't look to the purpose of the statute, but it seems to me that's your best argument, which is the purpose was to stop people from clogging fax machines. Computers are fax machines, but what the statute defines it as is different in kind. It says capacity to transcribe text or images from an electronic signal received over a phone line, regular phone line onto paper, and I guess where I'm struggling is a computer with a modem can do that and a printer can do that, if that makes sense. I recognize that's a subset of the plaintiff's class, but go ahead. I would submit we are reading into the statute more than what the as I mentioned a moment ago. Those are that intervening step from the computer to an affirmative aspect. Explain that to me. I'm sorry to interrupt you, but explain that to me because I'm a little lost what I'm reading in over a regular telephone line onto paper. What am I reading in? It defines it broader than the definition you put forth, which I probably agree was Congress's purpose. I'll concede that, but the plain language doesn't get you there. Well, what I think what you're reading into is if it goes to a computer, there's where it sits until somebody does something with it, either delete it, print it, forward it, or something else. I'm sorry. The language says it has to have the capacity. It doesn't say it has to be print upon receipt. Yeah. I mean, I appreciate that's what the language says, and again, without looking at the intent of the statute, the intent was to not clog up fax machines and use up paper and print everything else. I don't think you need to go there. I think if you read that an e-fax does not count, and if part of the fax logs here, which were not admitted, contain e-fax in the class should have never been certified in the first place. Tell me how do you deal with the FCC's West fax ruling from 2015? Because it defines, it says, hey, wait, these e-faxes are covered by the Telephone Consumer Protection Act as long as they came over a telephone line. Yeah. Candidly, I think that's an overreach by the FCC in the interpretation. I understand they were charged with the authority to make administrative regulations, but I think they're reading more into that because computers did exist at the time the TCPA was enacted, and I think they're making a stretch in terms of what the... Well, they may be, but why are you not bound by it? I guess that's my question, by the 2015 West fax ruling of the FCC. Well, I understand that's the FCC's interpretation, but I submit that this court and any court can consider whether the FCC is correct in its interpretation of the statute. Do we ever get to that if the statute is clear? Do we care? No, you should not get there because the statute is clear. Correct. Well, the trouble is the statute's not clear because it doesn't define the word equipment. That's the problem. Yeah. But again, do you even get there if at the end of the day, we can't even figure out who received a fax over whatever mechanism? And that's the problem. I think it's an evidentiary thing that could lead this court to the easy direction of just enter judgment as opposed to go back is what the trial court wants to do and then almost have yet another trial where people could submit affidavits and say, well, four years ago, I did receive a fax. And I think that's what courts are very leery on to wait a minute. You're asking someone four or five years later to remember if they received a fax on a certain day. It's certainly more suspicious and suspect is the reliability of that evidence as opposed to the fax logs, which could have been procured in most cases. And I submit in this case as well. I mean, I won't dwell on it long, but one of the issues here was whether the plaintiff knew of the existence of West facts and in the pretrial process, they identified West facts as a witness on their disclosures two weeks before discovery closed. So they could have gone out and taken a deposition of West facts and asked all these questions about the fax logs and everything else. But as we sit here today, the March 8th fax, there is no log anywhere that says who received the fax on that. The expert tried to do reverse math and say, here's the fax list versus the failed. And I'm going to do reverse math and find out who might have received it. And then the March 28th as well. They had that opportunity. We cannot be, you know, forced to go through another process when we already had our day in court. Can I ask you one question related to personal jurisdiction? And that is, could Congress create a law granting nationwide personal jurisdiction over any corporation with sufficient contacts to the United States? I think rule 4K does address that. But in my three minutes of rebuttal, I will respond to that as it relates to Curitin AG, because I don't think the court is reasoning on personal jurisdiction for Curitin AG was proper. What about Curitin USA? I'm asking, could they create a 4K2 provision for United States corporations? They obviously could, and it'd be consistent. Yeah, the answer is yes. And the unresolved answer in that is it relates to the Bristol-Myers question, which we did raise. And I understand this morning, somebody moved to intervene. I'm not sure the court has to get there, but there is that question in a class action context. Can a non-resident plaintiff get jurisdiction over the defendant? And in this case, in Michigan, Eastern District of Michigan, I submit Bristol- Myers, this logical extension would say that, but I appreciate that no circuit court has ruled in that favor. And the one that has ruled the Seventh Circuit has obviously ruled against us in that regard. So I say I'm out of time and I'll reserve my three minutes. All right. Hear from your counsel. Counselor, you may proceed with your argument. Thank you, Your Honor. There are a lot of issues in this appeal, these cross appeals. And ultimately, I think most of them can be put into one of two buckets, either the evidentiary bucket and the liability for AG. And those are two I'd like to focus on. With respect to the first, and counsel said repeatedly during his argument, there's no admissible evidence. There's no admissible evidence. What we're dealing with is the same evidence that this court looked at and credited as non-controversial in American He said, and I've been a district judge, you expect the plaintiffs to follow through. You say, look, I'm going to accept the summary logs, but I expect you to prove it. And you could have gotten them in as summaries under, I think it's 1006, if I'm not rusty, but, and you didn't even authenticate them. And I could tell he was frustrated in reading what was going on below. A district judge did a lot of hard work and y'all dropped the ball. Why shouldn't he decertify the class at that point? Well, I I'm not sure I agree with that characterization. In fact, I don't. What we did was we presented them in the same way as they've been in every TCPA case. They were authenticated as a business record of Mr. Comneys. And there's no case anywhere. And this would be he said as much to begin with, but why he expected you to admit the evidence is that it didn't seem like we moved to admit the evidence for sure. And he denied it. Yeah. Which was wrong. And that's why we're here. Ultimately, it's a business, they're computer generated records. So they're not hearsay in the first place. They were generated contemporaneously by Westfax and received contemporaneously by Mr. Comney is part of the regular practice of Mr. Comney and Westfax over 18 years. And what they are is with respect to one broadcast. It's a complete log of which faxes failed and which were successful. And with respect to the March 8th, the first broadcast, he what he downloaded from Westfax was the list of those that failed. And so this isn't some sort of voodoo mystery math. The list of attempts and the ones that failed. Let's assume the district court got the evidentiary ruling, right? What's the proper remedy? Well, exactly what the district court did. Ultimately, there was plenty of evidence and it's in the district court's order, showing that this was a mass mass mass fax broadcast. The only issue is we didn't, we don't know exactly who received the faxes. And therefore, it was handled in a claims process as in the cases discussed in our brief out of this court, as well as a case out of the third circuit in which receipt of the fax was the issue. Because unlike this case, I'm talking about city select versus BMW bank. Now, in that case, there were no logs. Doesn't the district court have to I don't think so. I mean, ultimately, does an iPad qualify? Does what an iPad qualify? No. And an iPad wouldn't show as a successful fax transmission, but you could over receive an e-fax over iPad, correct? I don't know that you could. Okay. Ultimately, but you can see it an to receive it over a regular telephone line and print it is doesn't qualify. I think that's right. And regular telephone line, I think is the key, because one of the purposes of the statute is to protect the integrity of the phone lines. What if a computer is connected to Wi-Fi? I'm sorry, if it's connected to Wi-Fi? Yeah. So I never connect my computer to a regular telephone line. It's always connected to Wi-Fi. You still have to have a fax number at which to receive a fax. And that a fax number have a fax number in the definition. It says connected signal received over a regular telephone line. So if my computer is connected to Wi-Fi, does it qualify? If it's got the capacity to print, sure. But it's not connected over a regular telephone line. But there's a regular telephone line involved because I don't understand how you get from a regular telephone line to your computer or how you get from the sender of the fax to your computer, unless there's a regular telephone line involved. And that's the whole, that's what these logs show. All these things are sent over regular telephone lines. Is that right? You can't send a computer to computer? No, that'll show up as an email. Okay. Let me ask you this. Are you aware of the 2019 decision by the FCC, or at least it's CGAB? I am. AmeriFactors ruling? Yes, your honor. That have any effect or is that, would that be retroactive? Exactly. As your honor wrote in the ALCO case, which we focus on for another issue, that's something that changed their definition, changed the playing field. So it wouldn't be applied retroactively. And in fact, it shouldn't be applied at all yet because it's still on appeal. And therefore it's not a final order of the FCC under 47 USC section 155 C3. Why don't you just argue irrespective of all that though, the definition is clear. It seems like you and at least you and I agree on the definition. Maybe my colleagues don't. And if that's the case, we don't need to look at what the FCC is saying. That may be true. Although I think that your honors may be trying to narrow it in some way and suggest that the definite, the class definitions overbroad, which we would disagree with. Ultimately, I think one of the insightful things in the Westfax FCC decision, whether or not it's controlling is the observation that it makes no sense to have enforceability and liability turn on a factor that's outside the sender's control. That's outside of whose control? The sender's control. So in other words, if the sender sends a blast fax using blast fax software, which goes over regular telephone lines and is received. And then all of a sudden, whether or not that's an event that's covered by the statute is dependent entirely on the fortuity of the technology. I don't think that's a tenable position. And that's what Westfax stands for. Ultimately, with respect to this case, there isn't a shred of evidence in the record, incidentally, that anybody received this thing on anything other than a fax machine as anyone, a lay person would understand it. All of which by the by are computerized these days. They've got display screens and digital displays. So I'm not entirely sure how somebody's gonna draw that line saying, okay, your device protects you from unwanted fax advertising and your device doesn't. Look, anybody can email, send spam email and have no private enforcement against them. Advertisers pick faxing for a reason. And that reason is that people are more likely to see it and have to deal with it. And that's what the statute's all about. And another point on that, I think the court needs to bear in mind with respect to this case is this is a class of traditional fax technology. And they have to because of HIPAA. Under HIPAA, it's one of the methods faxing is one of the methods of communication that's compliant with the statute that email is not sufficiently private. So this is a blast fax to a bunch of dentists. And it's really kind of a hypothetical theoretical issue about, oh, well, wait a minute, some of them might have had iPads or something that in order to receive faxes that they want from pharmacies and in patients and whomever. Can I ask you about personal jurisdiction? Why doesn't Bristol Myers Squibb apply to the out of state plaintiffs that have no contacts to Michigan? Because it was never a decision about class actions, which are governed by Rule 23. And Rule 23 is a form of mass joinder. And from a constitutional perspective, it seems odd to me to say one type of joinder is permissible, but another type isn't. If it's in effect, the same thing. Well, ultimately, it's not. And I think that's what was joined by now Supreme Court Justice Barrett in the Moosad case in the Seventh Circuit said that when you are dealing with a mass action case, as was the situation in BMS itself, these everyone's in the courtroom as parties bringing their claim, whereas a class action in the Rule 23 is more of a representative action. So could you bring this in Michigan? And the other thing is, you were 50 miles away. You could have filed it in Toledo without a problem because they're an Ohio corporation. Could you bring this in Michigan State Court and get plaintiffs from California? Absolutely. As a class action, for sure. I mean, ultimately, I haven't looked closely at Michigan's equivalent of Rule 23, but my recollection from the last time I did was that it adopted the federal principles. You agree that Congress has limited us in 4K1 to Michigan's long-arm statute. So for Curitin USA, I'm talking about, not Curitin AG. I see. Okay. Because I was going to say 4K1 is different, but it is for foreign corporations. And so you agree that 4K1A requires us to apply the long-arm statute of Michigan. Right. And so I'm not sure I follow why the concerns that were laid out in Bristol-Myers Squibb wouldn't apply here, which is that, and Schutz in all those cases about defendants and defendants being protected and you in a California plaintiff that has no ties to Michigan and an Ohio corporation that has only ties to Michigan are involved the plaintiffs. And the answer I think is that we're not bringing in the California plaintiff. They're not here. They're not parties. You can't take discovery from them. The party thing I find interesting and troubling at the same time, because all you're doing then is you're getting around Bristol-Myers Squibb simply by, in all the concerns the Supreme Court raised, simply by calling it a class action versus a mass joinder. I don't know that it's more, I think with respect, it's more of a substantive difference though, because when you've got a mass joinder case, all these people are actually parties that they're subject to discovery. They have to give depositions. You don't do that with absent class members. But I think also the answer can be found in the Shady Grove opinion by the Supreme Court a few years back, where it said that for class actions, Rule 23 governs. And Rule 23 was authorized by Congress to make by the Rules Enabling Act. But so is Rule 4. Absolutely, but there's nothing in Rule 23 that limits a class action to classes where each absent member would be able to individually bring their case in the forum. Similarly, there's nothing that erases the 4k1 limitation. I suppose there isn't, but it also just seems bizarre that, for example, in 2005, Congress would think nationwide class actions were such a big deal in federal courts that they passed the class action Fairness Act, opening the doors, and now all of a sudden that you can't have nationwide class actions. You don't dispute you could bring this in Ohio, which is 40 to 50 miles away from the court you brought it in without any personal jurisdiction problems because you'd have general jurisdiction, correct? No, that I think that's true. But I don't think that there's any requirement in Rule 23 that it only applies where you decide to go to the defendant's hometown. I see I'm out of time. So I guess I will let me ask you, if you if you prevail here, what relief would you like us to offer in your behalf? I'd like two things. First of all, I would like an order directing that the fax logs and the testimony of Lee Howard, which is no different than the testimony of the experts in the other cases we cited, be credited such that we can have a money judgment for $500 times the successful faxes to be paid to those shown as successful on the fax logs. Secondly, we would like an order reversing the summary judgment for Curitin AG because as the ALCO case says, one of the categories of senders is the person is the entity whose products are advertised. There's no question that the products are advertised here and Curitin AG is absolutely was absolutely involved with Curitin USA as a general matter. They're not an innocent party like the party in Health One. Thank you, Your Honor. All right, we'll hear rebuttal this time. Thank you, Judge Clay. In answer to your question, I think counsel's asking the court to create facts that don't exist. They had their day in trial and I submit it's unusual that a TCPA class action case goes to trial, but it did and most of these cases are all on the class certification stage and that was the day that they had the opportunity to bring forth evidence to prove their claims and they failed. I mean, Lee Howard was rightfully excused as a witness because he wasn't qualified and the logs were not authenticated and I submit counsel at trial even acknowledged that the logs are hearsay. So to give a remedy that's based on a failure of proof would be inappropriate and that's why we think the judgment should be entered for Curitin USA as opposed to creating essentially a new class structure that allows them to go forward. I did not address in my initial comments about Curitin AG. I think that the, you know, it's unfortunate they had to be at trial, but was I think the Garner case, the health one case makes it perfectly clear that it is not, it's not on whose behalf it was sent. The factual evidence is clear that no one at Curitin AG was aware of the facts, didn't approve the facts in advance. They were not required to, USA was not required to send out faxes. So there's a complete separation there that the trial court got it right on the evidentiary issues at the trial. I think I asked you one question. I'm sorry to interrupt, but I'm not sure what did the plaintiffs exactly fail to prove at trial? Well, they have to, so the, I think they acknowledged that AG was not the sender in terms of like the health one says. Oh no, I'm not talking about AG. I'm sorry. I'm talking about USA. At USA they had to prove that somebody on, as any of these class plaintiffs received a fax on either March 8th or March 28th, 2016. They didn't. As the trial concluded, the court said, I'm excluding all evidence, both fax logs and emails and other things reporting that there is nothing that the trial can hold its head on to say, I'm going to go forward from this state. That's where they failed on their proof. And they were given fair warning that this is the case. And it's strategically, we chose. They did show that Lingus received a fax. They did. Dr. Lingus received two faxes and he testified to that. He could not testify that anybody else received a fax or it was part of a mass fax campaign or anything else. I mean, the day of the trial ended and that's, you know, you take a strategic decision and you could say, well, we can go back and challenge the class or we'll do what the judge asked him to. It's come to trial and prove it to me. And then I'll reconsider my, you know, I'll consider the issue. And they didn't. And that's why there's, there's no way they should be allowed to have that second bite of proverbial apple and say, well, we'll do a process, which the trial court wants to do. It goes forward and it really gives them the second day in court. And that is unfortunate because that should not have happened. And the trial court should have ended the USA. The trial court got it right factually on AG, but AG respectfully should never have been part of the case for jurisdictional reasons we've set forth in our brief. I see I'm out of time. The last thing I would ask judge Gilman is there is the Aiken-Gump FCC decision in September of 20, which I think those provide additional guidance on this. The questions you asked earlier about the FCC's interpretation of the statute, but I do realize we did not raise it in our briefs. All right. Thank you. The case is submitted. This honorable court is now adjourned.